*1085
 
 DOWNING, J.
 

 |2The defendant, Charles L. Holcombe, was charged by bill of information with one count of armed robbery, a violation of La. R.S. 14:64(A), and entered a plea of not guilty.
 
 [1]
 
 Following a jury trial, he was found guilty as charged. Thereafter, the State filed a habitual offender bill of information against him, alleging that he was a second-felony habitual offender.
 
 [2]
 
 He was initially sentenced to fifty-five years at hard labor without the benefit of parole, probation, or suspension of sentence. Following a habitual offender hearing, he was adjudicated a second-felony habitual offender, the previously-imposed sentence was vacated, and he was sentenced to seventy-five years at hard labor without benefit of parole, probation, or suspension of sentence. Holcombe now appeals, contending that his conviction must be reversed because the State violated his spousal privilege. For the following reasons, we affirm the conviction, the habitual offender adjudication, and the sentence.
 

 FACTS
 

 Madisonville Mayor Peter Gitz, the victim, owned and operated Badeaux’s Drive-In, a restaurant in Madisonville. After the restaurant closed at 10:00 p.m., he routinely went into his office, a shed behind the restaurant, totaled the receipts, and prepared the bank deposit. On June 21, 2006, at approximately 10:30 p.m., as the victim was exiting the shed with approximately $2300, he was attacked from behind. He did not see his attacker’s face, but he did note that the attacker was a white male, approximately 5'6" or 5'7", with “big” arms and legs, and short hair.
 
 [3]
 
 The attacker struck Mayor Gitz with a blunt object, possibly a pipe, between twelve and fifteen times. After Mayor Gitz fell to the ground, the attacker took a wallet from his pocket hand fled. Mayor Gitz was seventy-one years old at the time of the attack; he suffered a cracked jaw, numerous lacerations to his head which had to be stapled closed, and the loss of his bottom teeth, which were knocked out during the attack.
 

 Sylvia C. Leyva lived in the house next to Badeaux’s, adjacent to the parking area behind the restaurant. On the afternoon of the offense, while she was working in her yard, she saw a husky male with short hair looking over her fence and into the back of Badeaux’s. The man saw Ms. Leyva looking at him, and quickly walked away. At approximately 10:45 that evening, Ms. Leyva went out onto her porch after hearing moaning coming from behind Badeaux’s. She saw someone coming from the direction of Badeaux’s. As the person passed in front of her house, she turned on her porch light. The person looked at her before continuing on and she noticed that he had his left arm under his shirt, and was holding something. Mrs. Leyva identified the defendant in a photographic lineup and in court as the person she had seen looking into the back of Badeaux’s before the attack, and as the person who passed by her house after the attack.
 

 Video surveillance from Riverside Bar and Grill, across the street from Ba-deaux’s, showed an old, grey or silver Volvo passing by Badeaux’s three times at approximately the time of the offense.
 
 *1086
 
 Madisonville Police Officer David Smith recognized the vehicle as belonging to Rhonda Achee.
 

 The defendant and his wife, Lyndsey Gaspard, had moved in with Achee because they could no longer afford to pay for power or water to their home. Following the attack, the defendant and Achee drove to Covington in Achee’s car. The vehicle was subsequently stopped for a traffic violation where it was discovered that there was blood in the front of the vehicle.
 

 Gaspard had worked at Badeaux’s approximately one month prior to the attack, and the defendant had waited for her in and around the restaurant while she worked. On at least one occasion during that time, Melissa Bone, the restaurant | ¿manager, found the defendant behind the restaurant and told him he was not supposed to be there.
 

 At trial, Gaspard testified that she was married to the defendant between March 22, 2006 and about October of 2008. According to Gaspard, approximately two days before the offense, the defendant and Achee had discussed “getting” or “robbing” Mayor Gitz. Gaspard indicated that on the day of the offense, at about 11:30 a.m., the defendant drove to Badeaux’s, walked around the back, and then came back to the car.
 

 In a June 23, 2006 audiotaped statement, the defendant indicated that Achee had driven him to Badeaux’s on the night in question, dropped him off, and then driven around the block while he hid behind the shed. The defendant confessed to striking Mayor Gitz with “a stick or something” and grabbing his wallet. He indicated that Achee picked him up after the attack and they drove towards Coving-ton. The defendant indicated that there was approximately $1500 cash in the wallet. He claimed he burned the clothes he was wearing during the attack, and threw the stick he had used to hit the victim out of the window as he and Achee drove out of town.
 

 VIOLATION OF SPOUSAL PRIVILEGE
 

 In his sole assignment of error, the defendant argues that the trial court erred in denying the motion for mistrial based on the State’s comment on the defendant’s claim of privilege.
 

 The claim of privilege, whether in the present proceeding or upon a prior occasion, is not a proper subject of comment by the judge or counsel. No inferences may be drawn there from. La.Code Evid. art. 503(A)(1). With jury cases, the proceedings shall be conducted, to the extent practicable, so as to facilitate the making of the claims of privilege without the knowledge of the jury. La.Code Evid. art. 503(A)(2). Each spouse has a privilege during and after the marriage to refuse to [ ^disclose, and to prevent the other spouse from disclosing, confidential communications with the other spouse while they were husband and wife. La.Code Evid. art. 504(B). A communication is “confidential” if it is made privately and is not intended for further disclosure unless such disclosure is itself privileged. La.Code Evid. art. 504(A). The word “private” is defined as secluded from the sight, presence, or intrusion of others.
 
 Websters II New College Dictionary 880
 
 (1995). Thus, communications between spouses in the presence of others are not private, and therefore, not privileged.
 

 A prosecutor’s remark toward a defendant’s assertion of his privilege with respect to private interspousal conversations is governed by La.Code Crim. P. art. 771 (mistrial appropriate only if an admonition to the jury to disregard the remark or comment is insufficient to assure the
 
 *1087
 
 defendant a fair trial) rather than Article 770(3) (mistrial required unless the defendant requests only an admonition to the jury to disregard the remark or comment).
 
 State v. Bennett,
 
 357 So.2d 1136, 1141 (La.1978).
 

 Prior to trial, the defendant invoked his spousal confidential communications privilege.
 

 The State asserted the following during its opening statement:
 

 Lindsey Gaspard was, luckily for her, not part of this armed robbery because earlier in the afternoon on June 21st, her parents got what is called a physician’s emergency commitment. And Lindsey Gaspard was actually in St. Tammany Parish Hospital when this happened.
 

 But she went and told the sheriffs office everything that had happened, everything that had been done. Now, Lindsey, the rules of evidence don’t allow Lindsey to discuss anything that her husband, Charles Holcombe[,] told her when it was just the two of them alone. But any time a third person was present, she can tell you what was said.
 

 Following opening statements, the court recessed the matter for the day. The next day, the defense moved for a mistrial, arguing that the State’s reference to “the | ñrules of evidence” preventing disclosure of communications between the defendant and Gaspard violated La.Code Evid. art. 503, and the defendant could no longer obtain a fair trial. The State claimed it had not violated Article 503 because it had made no mention of the spousal privilege. The court denied the motion for mistrial, but held that the defendant was entitled to an instruction that no inference may be drawn on his invocation of the privilege; the defense refused the instruction.
 

 We disapprove of the challenged comments by the State which, even if they did not technically violate the letter of Article 503, certainly violated its spirit. However, we do not find that the improper comments created such prejudice against the defendant to warrant the granting of a mistrial. The State’s reference to the defendant’s assertion of a privilege was vague and did not place the substance of any privileged communication between the defendant and his wife before the jury. Further, the State had a strong case against the defendant. Non-privileged testimony from Gaspard indicated that, in her presence, the defendant and Achee planned to rob the victim; Mrs. Leyva saw the defendant leaving the scene of the offense, while hiding something under his shirt; and the defendant confessed to the crime. Moreover, the defendant refused the trial court’s offer of an instruction to the jury that no inference was to be drawn from his invocation of the spousal confidential communications privilege. Accordingly, the trial court did not abuse its discretion in denying the motion for mistrial.
 

 DECREE
 

 For the reasons mentioned above, we affirm the conviction, habitual offender adjudication and sentence.
 

 CONVICTION, HABITUAL OFFENDER ADJUDICATION, AND SENTENCE AFFIRMED.
 

 McCLENDON, J., agrees with the result reached by the majority.
 

 [1]
 

 . Rhonda L. Achee was also charged by the same bill of information with the same offense. (R. 82). Following a jury trial, she was found not guilty. (R. 48).
 

 [2]
 

 . The predicate offense was set forth as the defendant's May 3, 1999 guilty plea, under Twenty-second Judicial District Court Docket # 285943, to second degree battery, a violation of La. R.S. 14:34.1. (R. 125).
 

 [3]
 

 .The defendant is 5'6" tall. (R. 525-26, 639-40).